FILED
2008 Sep-30  PM 01:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

| | | |
|---|---|---|
| **SANDRA K. MADISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 6:07-CV-0489-KOB** |
| | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

The Claimant, Sandra Madison, filed an application for Disability Insurance benefits and Supplemental Security Income payments on December 4, 2002, alleging a disability commencing on April 9, 2000, and involving Crohn's Disease, diarrhea, back pain, swelling of the hands and feet, COPD with breathing difficulties, dizziness, vomiting, chronic infections, and fever.  The Commissioner denied the Claimant's application, and, on April 1, 2003, the Plaintiff properly requested a hearing before an Administrative Law Judge.  The ALJ conducted a hearing on June 22, 2004.  On September 25, 2004, the ALJ denied the Claimant's request for Disability Insurance Benefits and Supplemental Security Income Payments.  The Appeals Council denied the Claimant's request for review by notice on February 23, 2007.  The Claimant has exhausted all of her administrative remedies, and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3).  For the reasons stated below, the decision of the Commissioner will be affirmed.

1

## II.  Issues

1.      Whether the ALJ satisfied his legal duty to develop the record for the twelve

months proceeding the Claimant's application for benefits regarding Claimant's

back surgery.

2.      A. Whether the ALJ had a duty to gather medical records after the date of the

Claimant's application for benefits.

B.  Whether the ALJ's failure to ask the Claimant about her current or recent

medical treatment resulted in harmless error when the Claimant had ample

opportunity to produce new and material evidence to support her case.

## III.  Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person cannot:

> engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can
> be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months.

To make this determination, the Commissioner employs a five-step, sequential evaluation

process:

> (1)  Is the person presently employed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific
>       impairments as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the
>       economy?

> An affirmative answer to any of the above questions leads either to
> the next question, or, on steps three and five, to a finding of disability.
> A negative answer to any question, other than step three, leads to a
> determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520,

416.920.

Absent a showing of good cause to the contrary, the Commissioner must accord

substantial weight to the opinion of a treating physician. *Lamb v. Bowen*, 847 F.2d 698, 703

(11th Cir. 1998). The Commissioner must articulate specific reasons for failing to give the

opinions of treating physicians controlling weight and those reasons must be supported by

substantial evidence.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

When a Claimant attempts to establish disability through his or her own testimony of pain

or other subjective symptoms, the Commissioner must apply a three-part "pain standard," which

requires:

> (1) evidence of an underlying medical condition and either
> (2) objective medical evidence that confirms the severity of the
> alleged pain arising from that condition or
> (3) that the objectively determined medical condition is of such
> severity that it can be reasonably be expected to give rise to the
> alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *see also Holt v. Sullivan*, 921 F.2d 1221,

1223 (11th Cir. 1991).

## IV.  Standard of Review

The standard for reviewing the Commissioner's decision is limited.  This court must affirm

the Commissioner's decision if the Commissioner applied the correct legal standards and if his

factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. The Commissioner's factual determinations, however, are not reviewed *de novo*, but are affirmed if supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but the court must also view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ, *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## V. Facts

The Claimant was fifty years old at the time of the administrative hearing and has a sixth grade education level. (R. 233-34). Her past work experience includes stocking shelves at Wal-Mart. (R. 78, 234). According to the Claimant, on April 9, 2000 (R. 47) she developed Crohn's

Disease,[1] COPD,[2] stress, depression, and pain, and could no longer work (R. 53, 231).  She is currently unemployed. (R. 53).

During the Claimant's hearing before the ALJ, the ALJ asserted to the Claimant, "and you have the right to go ahead without representation if you want to, and if you do, I will get any medical that is outstanding like any hospital records or anything like that.  We would request those. . . ."  (R. 232).  At that hearing on June 22, 2004, the Claimant presented ER records from April 29, 2004 to the ALJ for his perusal.  During her testimony, the Claimant did not tell the ALJ or imply that she had been to the doctor more recently than April 29th.  The Claimant stated that she was not currently on any medications for COPD or Crohn's disease, other than motrin, tylenol, and antacids. (R. 237-40).  The ALJ asked the Claimant if she went to a "regular doctor" to which she responded in the affirmative and that she would see Dr. Leonard "when [she] need[ed] to." (R. 240).  After the hearing on June 22, 2004, the Claimant did not present to the ALJ, the Appeals Council, or this court any additional medical records.  Therefore, the ALJ based his decision upon the medical record as summarized below.

The Commissioner requested and received documentation of the Claimant's examination and treatment history from Dr. Michael Brasfield, an internist and one of the Claimant's treating physicians from January 1999 through November 2000. (R. 119-132).  On November 27, 2000, Dr. Brasfield ordered an MRI, which revealed no definite abnormalities. (R. 131-32).  In March of

---

[1]Crohn's disease is an inflamation of the digestive system and is often accompanied by pain in the abdomen, diarrhea, rectal bleeding, weight loss, joint pain, skin problems and fever.  *See* http://www.nlm.nih.gov/medlineplus/ crohnsdisease.html.

[2]COPD, or Chronic Obstructive Pulmonary Disease, is a group of chronic lung conditions that restrict the sufferer's ability to exhale and include chronic bronchitis and emphysema.  *See* http://www.nlm.nih.gov/ medlineplus/copdchronic obstructivepulmonarydisease.html.

2000, Dr. Brasfield ordered an MRI and a x-ray of the Claimant's spine, after she complained of neck pain. (R. 127-28). Neither test revealed abnormalities (R. 127). Dr. Brasfield discovered a benign cyst in the Claimant's right breast in September of 2000. (R. 121-23, 174). Dr. Brasfield ultimately diagnosed the Claimant with COPD, severe low back pain, and bronchitis. (R. 120, 135). He also noted that the Claimant previously suffered from reflux disease and Crohn's disease, both of which were presently inactive. (R. 135-36).

On November 27, 2000, Dr. Brasfield admitted the Claimant to the hospital for treatment of her respiratory problems. An x-ray revealed evidence of smoker's lung, emphysema, and mild chronic bronchitis. (R. 133). The Claimant's pulmonary function study showed a poor diffusion capacity and moderate pulmonary restriction deficit. (R. 141). After a diagnosis of COPD, dyspnea, and depression, Dr. Brasfield treated the Claimant with antibiotics, anti-nausea medication, and a nicotine patch. (R. 133). Dr. Brasfield released the Claimant on November 30, 2000 in an improved condition. (R. 133).

In September of 2001, the Claimant saw her regular treating physician and general practitioner, Dr. Leonard, complaining of a knot in her hand and limited motion. (R. 211). Dr. Leonard examined her back and found no tenderness to palpation along the spine and no bony abnormalities. (R. 212). The Claimant's rectal examination revealed no masses. (R. 212). Dr. Leonard noted that the Claimant had 5/5 muscle strength, proper sensation, and her reflexes were equal. (R. 212). A shoulder x-ray showed no obvious abnormalities and an EKG revealed no changes. (R. 212). Dr. Leonard concluded that the Claimant had a nicotine addiction with COPD, arm pain, probable osteoarthritis, history of degenerative spinal disc disease, ruptured disc surgery, and a history of mitral valve prolapse, Crohn's Disease, migraine headaches, nasal polyp,

pneumonia, and a ganglion cyst in her left wrist. (R. 212).  Dr. Leonard prescribed Skelaxin and

Vioxx for pain to the Claimant. (R. 213).

The Claimant visited Dr. Leonard again in January 2002, complaining of continued

shoulder pain and itching of the hands and feet; her physical examination revealed dermatitis. (R.

209).  The Claimant saw Dr. Leonard again in August of 2002 for insomnia, chest pain, breathing

difficulty, abdominal pain, and pain in her right leg. (R. 207).  The Claimant's EKG and x-rays

were normal, and Dr. Leonard diagnosed the Claimant with chest pain, fatigue, nicotine addiction,

degenerative disc disease of the spine, Crohn's disease, and probable depression and anxiety. (R.

208).

On September 9, 2002, the Claimant went to the ER complaining of chest pain, nausea,

and sweating. (R. 145, 147).  Dr. Herring, who specializes in internal and emergency medicine,

examined the Claimant and diagnosed her with chest pain, a history of COPD and Crohn's

disease, hypercholesterolemia,[3] and stable coronary artery disease, and noted that the Claimant

had lumbar disc surgery five years prior. (R. 147).  Specifically, Dr. Herring recorded that the

Claimant had not been on any medications for her Crohn's disease for some time and that she

"remains with a stable weight and no obvious GI disturbances or upset at this point in time, or

pain" and "denies any significant problems or discomfort with that." (R. 147-49).  The Claimant's

coronary catheterization was negative for significant artery disease, and her left ventricle

functioned normally. (R. 146, 162-63).

The Claimant saw Dr. Leonard later in September of 2002 and experienced no acute

---

[3]"Hypercholesterolemia" is a condition describing high cholesterol levels in the blood of the patient.  *See* http://ghr.nlm.nih.gov/condition=hypercholesterolemia.

symptoms. (R. 204).  The Claimant reported that her pain improved with medication; Dr. Leonard's physical examination was normal. (R. 202).  Dr. Leonard also noted evidence of depression in the Claimant and suggested anti-depressants; however, the Claimant refused the proposed treatment. (R. 203).

The Claimant sought ER care on October 30, 2002 in response to a fever, abdominal pain, and a urinary tract infection.  (R. 186).  The Claimant received antibiotics and a Demeral injection, and was discharged when stable. (R. 187, 190).  On November 1, 2002, the Claimant saw Dr. R. Jay Smith, a temporary treating physician, complaining of abdominal and back pain. (R. 173).  Dr. Smith noted that she had not been evaluated for Crohn's disease in "quite sometime" and suggested an abdominal CT scan. (R. 173).  The Claimant's abdominal ultrasound was unremarkable (R. 172, 183), but a subsequent CT scan revealed thickening of the bowel wall, consistent with Crohn's disease. (R. 170, 180).  On December 9, 2002, Dr. Jack Mauldin, a gastroenterologist, performed a colonoscopy and determined that Claimant's Crohn's disease was in remission as to her colon; the Claimant's small bowel series test also did not indicate Crohn's disease. (R. 177-78).

On January 9, 2003, the Claimant presented to Dr. Leonard, her regular treating physician, and complained of abdominal pain, nausea, vomiting, and diarrhea. (R. 195-96).  Dr. Leonard determined that the Claimant would likely benefit from anti-depressants and noted that the Claimant insisted that "something is wrong with her medically." (R. 196).

On February 12, 2003, at the request of the agency, the Claimant went to the Alabama Health Center for a Pulmonary Function test.  The study revealed no airflow obstructions, mild, isolated reduction of FEV1, and a moderately impaired diffusion capacity. (R. 215).

8

On February 17, 2003, psychologist Dr. Bray, an agency-consulted physician, opined that the Claimant "is not currently experiencing and has not in the recent past experienced symptoms which would qualitatively and quantitatively support a diagnosis of a mental illness." (R. 222-24).

On March 4, 2003, Dr. Richard Carter, a medical consultant at the Alabama Division of Disability Determination Service, reviewed the record in this case to determine the Claimant's functional capacity.  Dr. Carter considered the record in this case and determined that the medical evidence showed that the Claimant's Crohn's disease was in remission and that her complaints of Crohn's disease were not credible.  (R. 102).  He also concluded that the Claimant's complaints of symptoms related to her COPD were only partially credible because her pulmonary capacity did not correspond to the severity of her symptoms.  (R. 102).  Finally, Dr. Carter opined that the Claimant's complaints of disability due to back pain were not credible because the record lacked evidence of a back impairment.  (R. 102).

According to the Claimant, at her hearing on June 22, 2004, she presented the ALJ with documentation of an ER visit on April 29, 2004. (R. 229, See Claimant's Brief, pg. 5).  On that date, the Claimant complained of rectal bleeding and abdominal pain and Dr. Scott Naley, an ER physician, examined her and ordered testing.  Dr. James Bradley, the physician assigned to interpret the Claimant's test results, determined that the Claimant had COPD and that "no specific intra-abdominal pathology" existed. (R. 225).

After considering the foregoing medical history and testimony from the Claimant's hearing, the ALJ applied his knowledge of the record to the five step analysis outlined in 20 C.F.R. §404.1520.  First, the ALJ determined that the Claimant had not performed substantial gainful work since April 9, 2000. (R. 21).  Second, the ALJ summarized what he deemed as the

"most definitive and probative medical evidence" and concluded that the Claimant's impairments of COPD and Crohn's disease were "severe" under established regulatory guidelines.  Third, the ALJ concluded that the Claimant's impairments did not meet or equal the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  Fourth, the ALJ assessed whether the Claimant retained the "residual functional capacity" to perform her past work. (R. 23).  The ALJ considered the Claimant's medical conditions, subjective pain complaints, objective medical evidence, the Claimant's credibility, and the determination of Dr. Carter. (R. 24).  He opined that while the Claimant could not return to her past work, which required medium exertion, the Claimant is capable of performing light and sedentary work. (R. 25).  Fifth, the ALJ evaluated whether other work exists within the national economy that accommodates the Claimant's limitations.

At the Claimant's hearing, the ALJ posed a hypothetical to vocational expert, Dr. Russell (R. 241), who determined that given the Claimant's age, education, functional capacity, and past relevant work, she would be capable of making a "vocational adjustment to other work." (R. 26). Specifically, 6,300 to 9,700 jobs exist at the light exertional level, and 2,400 to 3,200 jobs exist at the sedentary level.  Finally, the ALJ asserted that evidence produced at the Claimant's hearing did not alter the ALJ's findings regarding functional capacity, and that the "opinions of the State agency consultants should be affirmed and given significant weight in making this decision." (R. 27).  Therefore, the ALJ concluded that the Claimant had a status of "not disabled." (R. 26).

## VI.  Discussion

**1.      The ALJ did not have a legal duty to obtain records of the Claimant's back surgery.**

The Claimant maintains that the ALJ failed to obtain records of her back surgery and that the absence of these records precluded a full and fair development of the record in the case.

10

However, the ALJ did not have a duty to obtain records of the Claimant's back surgery.  Social

Security hearings before an ALJ are not adversarial proceedings; therefore, the ALJ has a "basic

obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.

1997) (citing *Cowart v. Schweiker*, 662 F. 2d 731, 735 (11th Cir. 1981)).  This duty is imposed

regardless of whether the Claimant is represented by counsel.  *Cowart v. Schweiker*, 662 F. 2d at

735-36.  However, the ALJ's duty rises to a "special" level if the Claimant does not waive his or

her right to counsel during a proceeding.  *Graham v. Apfel*, 129 F.3d 1420 (11th Cir.

1997)(quoting *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995)).  In this case, the

transcript of the Social Security hearing supports the ALJ and Appeals Council's conclusion that

the ALJ properly apprised the Claimant of her right to legal representation at the hearing and that

she waived her right to counsel. (R. 5, 19; 231-32).  This court agrees that the Claimant properly

waived her right to counsel; therefore, the Claimant's lack of representation did not impose a

"special" or heightened duty on the ALJ beyond creating a full and fair record.

     An ALJ compiles a "full and fair" record when the record includes the Claimant's

"complete medical history for at least the 12 months preceding the month in which [the Claimant]

file[s][the] application" in the record.  *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *see

also* 20 C.F.R. § 416.912(d)(stating the same).  The Claimant suggests that the ALJ's failure to

procure records of her previous back surgery resulted in an inadequate record that requires

reversal.  The record indicates that the Claimant had lumbar disc surgery at some point during

1997. (R. 147).  Both parties stipulate that the Claimant filed her application for disability and

disability insurance benefits on December 4, 2002. (R. 52; Claimant's Brief, Brief of Comissn'r).

Therefore, the ALJ had the duty to obtain medical records from, at the earliest, November of 2001

to develop a full and fair record.  Because the record indicates that the Claimant had surgery in 1997 and the ALJ was not required to compile records before November of 2001, the ALJ did not have a duty to obtain documentation of the surgery.

In addition, when requesting Social Security benefits and insurance, the Claimant has the burden to prove her impairment through medical evidence. 20 C.F.R. § 416.912(c).  In this case, the Claimant had ample opportunity to compile records of her back surgery and treatment and submit them for the ALJ's review.  The record indicates that the Claimant did not submit documentation of her back surgery or back impairment for the ALJ or the Appeals Council to review. (R. 5).  Therefore, the ALJ did not have a duty to procure records of the Claimant's back surgery.

**2.      The ALJ did not have a duty to gather medical records after the date of the Claimant's application for benefits; however, even if the ALJ impliedly assumed such a duty, his failure to ask the Claimant about her current or recent medical treatment resulted in a harmless error because the Claimant had ample opportunity to produce such evidence.**

**A.      The ALJ did not have a duty to gather medical records after the date of the Claimant's application for Social Security insurance and benefits.**

The Claimant contends that the ALJ had a duty to gather the Claimant's most recent or current medical documentation and that his failure to do so resulted in a failure to fully develop the record.  However, this court finds that the ALJ did not have a duty to gather medical records after the date of the Claimant's application for benefits.

In a claim for social security benefits, the Claimant bears the burden of proving disability and is required to produce medical evidence demonstrating an impairment.  *See* 20 C.F.R. §§ 416.912(a)-(c).  The Claimant must provide evidence to answer the questions: "(1)  Is the person presently employed? (2)  Is the person's impairment severe? (3)  Does the person's impairment

meet or equal one of the specific impairments as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? (4)  Is the person unable to perform his or her former occupation?"  *Williams v. Astrue*, 2008 WL 4163197, *1 (citing *Phillips v. Barnhart*, 357 F.3d 1232-1237-39 (11th Cir. 2004)). Although the ALJ must evaluate a full and fair record, the ALJ is only required to gather medical records twelve months prior to the date of the Claimant's application. 20 C.F.R. § 416.912(d).

In *Ellison v. Barhart*, the Claimant asserted that the record was not full and fair because the ALJ failed to obtain records for 1999-2000 when the Claimant filed for benefits in December of 1998.  *Ellison*, 355 F.3d 1272, 1274-76 (11th Cir. 2003).  In that case, the court stated that because the Claimant's "focus [was] on the period after his filing. . . [t]he ALJ, however, was in *no way bound* to develop the medical record for 1999 and 2000." *Id.* (emphasis added).  In further support of the ALJ, the court noted that the ALJ attempted to obtain evidence of hospital visits and treatment from 1999-2000 by asking the Claimant to provide him with the records before he drafted his opinion. *Id.*  However, the Claimant failed to provide the records and the court held that the ALJ properly denied the Claimant's social security benefits. *Id.*

The Claimant in this case contends that the ALJ did not fully and fairly develop the record because evidence of the Claimant's medical treatment was not current at the time of her hearing. The Claimant applied for benefits on December 4, 2002.  According to *Ellison* and 20 C.F.R. § 416.912(d), the ALJ in this case was in no way bound to develop the record for 2002-2004. Therefore, this court finds that the ALJ did not err by failing to obtain the Claimant's medical records for 2002-2004 and the absence of the records did not impair the fullness or fairness of the record as a whole.

B.      **The ALJ's failure to ask the Claimant about her current or recent medical treatment was a harmless error because the Claimant had ample opportunity to submit additional evidence.**

The Claimant argues that the ALJ failed to develop a fair and full record because he did not inquire about the Claimant's current medical treatment during her hearing.  Even if the ALJ, through his statements made at the hearing, assumed a duty to collect the Claimant's current records, nothing indicates that such records exist.  At the Claimant's hearing on June 22, 2004 (R. 229), the ALJ stated "And you have the right to go ahead without representation if you want to, and if you do, I will get any medical that is outstanding like any hospital records or anything like that.  We would request those. . . ."  (R. 232).  Therefore, the ALJ may have led the Claimant to believe that he would assume the duty of compiling any outstanding and current medical records pertinent to the Claimant's case.  However, no testimony or evidentiary submission indicates that such records exist.

At her hearing on June 22, 2004, the Claimant submitted ER records for April 29, 2004 detailing her symptoms and diagnosis.  (*See* Claimant's Brief, pg. 5).  During her testimony, the Claimant did not tell the ALJ or imply that she had been to the doctor more recently than April 29th.  In addition, the Claimant stated that she was not currently on any medications for COPD or Crohn's disease, other than motrin, tylenol, and antacids. (R. 237-40).  The ALJ asked the Claimant if she went to a "regular doctor" to which she responded in the affirmative and that she would see Dr. Leonard "when [she] need[ed] to." (R. 240).  Unlike the Claimant in *Ellison*, the Claimant in the instant case did not allude to or notify the ALJ of outstanding medical records that would be of importance to the ALJ in making his final decision. *See* 355 F.3d at 1274-76.  This

14

court finds that a reasonable person could conclude that no new and material medical records existed when the Claimant stated that she was not taking prescription medications, the Claimant submitted recent medical records to the ALJ during the hearing, and the Claimant failed to mention any additional medical examination or treatment during her hearing.

Even though the ALJ did not directly inquire as to whether or not the Claimant had received recent medical treatment, Claimant had ample opportunity to supplement the record. Five days after the ALJ denied benefits to Ms. Madison, on September 30, 2004, she obtained legal representation. (R. 13). Her counsel subsequently requested a copy of the exhibits and the right to submit a reply brief. (R. 11). On December 20, 2004, the Appeals Council responded to Claimant's counsel, provided the requested exhibits, and stated "you may send us more evidence or a statement about the facts and the law in this case. Any more evidence must be new and material to the issues considered in the hearing decision." The Appeals Council provided the Claimant with a twenty-five-day grace period in which to submit additional evidence to the Council. (R. 9). The Claimant submitted a memorandum dated January 11, 2005; the Claimant did not make any additional submissions of medical records to the Appeals Council. (R. 8; 226). Over two years later, on February 23, 2007, the Appeals Council published its opinion denying review in the Claimant's case. The Council cited the Claimants' waiver of right to counsel, failure to submit updated medical records, and the passage of time since her back surgery as its reasons for denying a review of the ALJ's decision. (R. 5).

The Claimant had ample opportunity to submit additional medical records in the three years between the Appeals Council request for new and material evidence and the Council's final

decision.  Therefore, even though the ALJ did not have a duty to request medical records after the date of the Claimant's application for benefits, the absence of such records did not prevent a full and fair record because the testimony or evidentiary submissions did not indicate that such records existed or that they would provide new and material evidence.

**Conclusion**

Based on the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the ALJ developed a full and fair record in the Claimant's case.  In addition, the ALJ properly evaluated the Claimant's case under the five-step sequential evaluation process.  Therefore, substantial evidence supports the ALJ's decision in this case and the court will AFFIRM the Commissioner's decision denying the Claimant's entitlement to Disability Insurance Benefits and Supplemental Security Income payments.

The court will enter a separate Order in conformity with this memorandum opinion.

DATED this 30th day of September 2008.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE